# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CAMBRA L. LUCAS,
        Appellant,

      v.

OFFICE OF PERSONNEL
  MANAGEMENT,
        Agency.

DOCKET NUMBER
SF-0845-13-0413-B-1

DATE: February 8, 2023

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>Cambra L. Lucas</u>, Ripon, California, pro se.

<u>Karla W. Yeakle</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

The appellant has filed a petition for review of the remand initial decision, which affirmed the determination of the Office of Personnel Management (OPM) that the appellant received an overpayment and that she was not entitled to a

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

waiver. For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM the remand initial decision in part, REVERSE it in part, and REMAND the matter to OPM for recalculation of the appellant's overpayment and issuance of a new reconsideration decision.

¶2　　In March 2007, OPM approved the appellant's application for disability retirement under the Federal Employees' Retirement System (FERS). *Lucas v. Office of Personnel Management*, MSPB Docket No. SF-0845-13-0413-I-1, Initial Appeal File (IAF), Tab 10 at 21. At that time, her application had not yet been fully processed, but OPM began providing interim payments. *Id*. at 21-22.

¶3　　In July 2010, OPM notified the appellant that her interim payments had exceeded that which she actually was due by nearly $90,000. *Id*. at 14. OPM attributed the overpayment to the appellant's monthly annuity not being reduced by her health insurance premiums, life insurance premiums, and award of Social Security Administration (SSA) disability benefits. *Id*. at 9-10. The appellant immediately requested reconsideration and waiver of the overpayment. *Id*. at 19-20. OPM issued its reconsideration decision in April 2013, making a minor adjustment to the overpayment total and acknowledging that the appellant was not at fault, but otherwise affirming its overpayment decision and denying waiver. *Id*. at 6-11.

¶4　　The appellant sought Board review of OPM's reconsideration decision. IAF, Tab 1. The administrative judge found that the appellant was overpaid by $89,636. IAF, Tab 15, Initial Decision (ID) at 2-5. Of the $89,636 overpayment, the administrative judge found that $47,736 was caused by the failure to account for the appellant's SSA benefits, while the remaining $41,900 was caused by a mistake from her employer in reporting the date her pay ceased, OPM's failure to make deductions for insurance premiums during the period of interim annuity payments, and OPM's failure to reduce the interim payments after the first 12 months as required by a change in formula. ID at 6-7. The administrative judge concluded that the appellant was not entitled to waiver for any portion of

the overpayment. ID at 6-11. On review, the Board affirmed the initial decision. *Lucas v. Office of Personnel Management*, MSPB Docket No. SF-0845-13-0413-I-1, Final Order (May 21, 2014). The appellant then appealed the Board's decision to the U.S. Court of Appeals for the Federal Circuit. *Lucas v. Office of Personnel Management*, MSPB Docket No. SF-0845-13-0413-L-1, Litigation File, Tab 1.

¶5      The Federal Circuit found that a document OPM submitted for the first time during the petition for review process constituted new and material evidence that the Board should have considered. *Lucas v. Office of Personnel Management*, 614 F. App'x 491, 495 (Fed. Cir. 2015) (referencing *Lucas v. Office of Personnel Management*, MSPB Docket No. SF-0845-13-0413-I-1, Petition for Review (PFR) File, Tab 4 at 6).[2] The court further found that the new and material evidence could warrant a different outcome in her case. *Id.* Therefore, the court remanded the matter for proceedings "limited to the Board's consideration of whether new and material evidence in the form of [the appellant's] SSA Response Screen document would render recovery unconscionable under the circumstances." *Id.* Accordingly, we remanded the matter to the administrative judge for further adjudication on the limited issue identified by the Federal Circuit. *Lucas v. Office of Personnel Management*, MSPB Docket No. SF-0845-13-0413-M-1, Remand Order, ¶ 7 (Dec. 1, 2015).

¶6      On remand, the administrative judge permitted the parties to conduct additional discovery and submit argument and evidence. *See Lucas v. Office of Personnel Management*, MSPB Docket No. SF-0845-13-0413-B-1, Remand File (RF), Tabs 3, 7-8. After doing so, the administrative judge found that the appellant did not meet her burden of establishing that she was entitled to a waiver

---

[2] The new evidence was an SSA Response Screen pertaining to the appellant, which suggested that OPM was aware of the appellant's receipt of SSA benefits as early as October 2008. PFR File, Tab 4 at 6; *see Lucas*, 614 F. App'x at 494-95.

of any portion of her overpayment. RF, Tab 26, Remand Initial Decision (RID) at 4-10. Therefore, she affirmed OPM's reconsideration decision. RID at 11. The appellant has filed a petition for review. *Lucas v. Office of Personnel Management*, MSPB Docket No. SF-0845-13-0413-B-1, Remand Petition for Review (RPFR) File, Tab 4. OPM has filed a response. RPFR File, Tab 7.

¶7 In her petition, the appellant first suggests that the administrative judge improperly limited the scope of her appeal. RPFR File, Tab 4 at 5. We disagree. The Federal Circuit specified that it was "remand[ing] for proceedings limited to the Board's consideration of whether new and material evidence in the form of [the appellant's] SSA Response Screen document would render recovery unconscionable under the circumstances." *Lucas*, 614 F. App'x at 495. The administrative judge properly recognized those instructions and adjudicated the remanded appeal accordingly, focusing on the portion of the overpayment attributable to the SSA benefits, $47,736, and the October 2008 SSA Response Screen. RF, Tab 8 at 1-2; RID at 2-3 n.2; *see Fearon v. Office of Personnel Management*, 109 M.S.P.R. 606, ¶ 5 (2008) (observing that, if the appellant is without fault and recovery of some portion, but not all, of the overpayment would be against equity and good conscience, a partial waiver is warranted).

¶8 The appellant also argues, generally, that the administrative judge erred by denying her motion to compel discovery. RPFR File, Tab 4 at 17-18. Again, we disagree. An administrative judge has wide discretion over matters relating to discovery, and the Board will not reverse rulings on discovery matters absent an abuse of discretion. *Parker v. Department of Housing and Urban Development*, 106 M.S.P.R. 329, ¶ 9 (2007). Here, the administrative judge properly denied the appellant's first motion to compel because she had not complied with the Board's regulations, which require that a motion to compel include "[a] statement that the moving party has discussed or attempted to discuss the anticipated motion with the nonmoving party or nonparty and made a good faith effort to resolve the discovery dispute and narrow the areas of disagreement." 5 C.F.R.

§ 1201.73(c)(1)(iii); *see Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 16 (2016); *compare* RF, Tab 9 at 4, *with* RF, Tab 15 at 1.

¶9 Subsequently, the appellant filed a second motion to compel, which the administrative judge granted in large part. RF, Tabs 17, 19. The administrative judge did deny the appellant's requests to depose several OPM employees, finding that she had not shown that the individuals in question would have relevant and material information. RF, Tab 19 at 1 (referencing RF, Tab 17 at 7, 24); *see, e.g.*, *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶¶ 9-10 (2010) (finding no abuse of discretion when an administrative judge denied a motion to compel depositions because they would not have provided information reasonably calculated to lead to admissible evidence). She also denied the motion to compel documents regarding systems accesses and contacts over a nearly 10-year period, finding the request overbroad. RF, Tab 19 at 2-3 (referencing RF, Tab 17 at 6, 21-22); *see, e.g.*, 5 C.F.R. § 1201.72(a) (recognizing that, for purposes of discovery, "[r]elevant information includes information that appears reasonably calculated to lead to the discovery of admissible evidence"). Although the appellant generally argues that the administrative judge erred, she has failed to establish that the administrative judge's discovery rulings were an abuse of discretion. RPFR File, Tab 4 at 17-18.[3]

¶10 Turning to the merits, the appellant disputes the administrative judge's finding that recovery of the overpayment would not be unconscionable. *Id.*

[3] The appellant points out that OPM was untimely in submitting responses to her discovery, as required by the administrative judge's ruling on the motion to compel. RPFR File, Tab 4 at 17; *compare* RF, Tab 19 (granting the appellant's motion to compel, in part, and requiring that OPM respond by April 29, 2016), *with* RF, Tab 20 (the appellant's request for sanctions because OPM did not meet the April 29, 2016 deadline), *and* RF, Tab 23 (OPM's untimely response to discovery, submitted on May 5, 2016). To the extent that the appellant is once again suggesting that OPM should be subject to sanctions for its untimeliness, we disagree. *See Pecard v. Department of Agriculture*, 115 M.S.P.R. 31, ¶ 18 (2010) (recognizing that the denial of sanctions is subject to the abuse of discretion standard of review).

at 4-32; *see* RID at 5-9. She also disputes the administrative judge's alternative findings concerning the set-aside rule. RPFR File, Tab 4 at 23-24; *see* RID at 9-10. For the reasons described below, we find that the appellant is entitled to a waiver of a portion of her overpayment, the portion attributable to OPM's 21-month delay in adjusting the appellant's annuity to account for her SSA benefits after getting specific notice of the same. The administrative judge erred in concluding otherwise.

¶11 As recognized throughout this appeal, the appellant bears the burden of establishing entitlement to a waiver of an overpayment by substantial evidence. *Boone v. Office of Personnel Management*, 119 M.S.P.R. 53, ¶ 5 (2012). Generally, the recovery of a FERS overpayment should be waived if the recipient is without fault and recovery would be against equity and good conscience. *Id.*; *see* 5 U.S.C. § 8470(b); 5 C.F.R. § 845.301. Recovery is against equity and good conscience when, as alleged here, recovery would be unconscionable under the circumstances. *Boone*, 119 M.S.P.R. 53, ¶ 5; 5 C.F.R. § 845.303(c).

¶12 The Board has found that the unconscionability criterion is a high standard justifying waiver only under exceptional circumstances. *Boone*, 119 M.S.P.R. 53, ¶ 9. Because the concept of unconscionability is ordinarily defined in terms of broad equitable considerations, the Board will consider all relevant factors using a totality-of-the-circumstances approach to determine whether recovery of an annuity overpayment is unconscionable in a given case. *Id.* The Board has found that circumstances of unconscionability may include, but are not limited to, cases in which (1) there has been an exceptionally lengthy delay by OPM in adjusting an annuity; (2) OPM failed to respond within a reasonable length of time to an annuitant's inquiries regarding an overpayment; (3) OPM failed to act expeditiously to adjust an annuity in the face of specific notice;[4] or (4) OPM was

---

[4] In its remand decision, the Federal Circuit noted that, if OPM received notice of the appellant's SSA benefits in 2008, as suggested by the October 2008 SSA Response

otherwise grossly negligent in handling the case. *Vojas v. Office of Personnel Management*, [115 M.S.P.R. 502](#), ¶ 22 (2011).

¶13 Utilizing the aforementioned standards, the administrative judge concluded that the totality of the circumstances did not render recovery of the overpayment unconscionable. RID at 5-9. Among other things, she found that OPM first approved the appellant's annuity in March 2007, SSA awarded her disability benefits that same month with payments starting in May 2007, and OPM became aware of the SSA benefits in October 2008, but OPM failed to adjust the appellant's annuity payment, recognize the corresponding overpayment, and finalize the appellant's retirement annuity, until July 2010. RID at 5-7. In addition to those unexplained delays, the administrative judge also considered the subsequent unexplained delay of more than 2 1/2 years before OPM issued its final ruling on the appellant's request for a waiver.[5] RID at 7. She further considered OPM's prior misrepresentations in this appeal, concerning when it first learned of the appellant's SSA benefits. *Id.* Nevertheless, the administrative judge determined that the totality of the circumstances did not warrant waiver. RID at 5-10.

¶14 On review, the appellant again argues that OPM's actions were unconscionable, or even criminal. RPFR File, Tab 4 at 6-32. In large part, she does so by reasserting that OPM's information technology systems should have alerted OPM of her SSA benefits in April 2007, long before the October 2008

Screen, but failed to implement a corresponding reduction in her annuity payments until 2010, then OPM did not act expeditiously, thereby "undermin[ing] one basis for the Board's conclusion that the delay was not unconscionable." *Lucas*, 614 F. App'x at 495. OPM has since acknowledged that the October 2008 SSA Response Screen demonstrates that it first became aware of the appellant's approval for SSA benefits at that time. RF, Tab 16 at 4.

[5] While considering this delay, the administrative judge mistakenly identified the dates as August 2007 and April 2010. RID at 7. The proper dates were August 2010 and April 2013. IAF, Tab 10 at 6.

date recognized by the administrative judge. *Id*. at 9-16. Like the administrative judge, we found no evidence that OPM actually did know of the appellant's SSA benefits prior to October 2008.[6] *See* RID at 6-7; *compare* PFR File, Tab 4 at 6 (SSA Response Screen dated October 16, 2008, verifying that the appellant was receiving SSA disability), *and* RF, Tab 16 at 4 (OPM's admission that it learned of the appellant's SSA benefits on October 16, 2008), *with* RF, Tab 22 at 9 (SSA Response Screen dated April 2, 2007, with no information concerning SSA benefits). Accordingly, the record supports only a delay of approximately 21 months between OPM learning of the portion of the overpayment attributable to the appellant's SSA benefits and OPM taking action. PFR File, Tab 4 at 6; RF, Tab 16 at 4; IAF, Tab 10 at 14.

¶15     The appellant's point about the delay between her SSA benefit award, in March 2007, and the date on which we have evidence of OPM learning of those benefits, in October 2008, is well taken, nonetheless. OPM has acknowledged that it receives reports from SSA regarding the award of SSA benefits on a monthly basis and that those reports are compared with OPM's list of annuitants each month. RF, Tab 17 at 12. We have no indication, though, that this monthly comparison captured the appellant's SSA award between March 2007 and October 2008.

¶16     The appellant next suggests that OPM's initial misrepresentations concerning when it learned of her SSA benefits were intentional. *E.g.*, RPFR File, Tab 4 at 26-27. But, we have no basis for concluding that OPM's prior misrepresentation was anything other than an inadvertent mistake, which OPM did eventually remedy by providing relevant evidence. *Supra* ¶ 5 n.2; PFR File, Tab 1 at 7, Tab 4 at 6. Even so, this was another error on the part of OPM with

---

[6] We recognize the appellant's assertion that she mailed OPM a copy of her SSA award letter. *E.g.*, RPFR File, Tab 4 at 20. It appears, though, that neither the appellant nor OPM have any evidence of OPM receiving the same.

respect to the appellant and her annuity. We also find it noteworthy that OPM provided the evidence demonstrating its earlier mistake, unceremoniously, as if the evidence was inconsequential, when the opposite was true. *Compare* IAF, Hearing Recording (testimony of OPM official, indicating that OPM did not learn of the appellant's SSA benefits until July 2010), *with* PFR File, Tab 4 at 5-6 (OPM's submission of evidence that suggested OPM had notice of those benefits as of at least October 2008, without any comment about its significance or the accuracy of OPM's prior representations); RF, Tab 16 at 4 (OPM implicitly acknowledging it had previously misrepresented when it learned of the appellant's SSA benefits).

¶17     The appellant also reasserts that other matters, such as the significant health issues she experienced during her initial disability retirement, are further reasons to waive the overpayment. RPFR File, Tab 4 at 19-22. The Board has recognized that an annuitant's health may be relevant under the totality-of-the-circumstances approach for determining whether recovery of an overpayment would be unconscionable. *See Aguon v. Office of Personnel Management*, 42 M.S.P.R. 540, 550-51 (1989) (remanding an overpayment appeal for an appellant to submit argument and evidence regarding whether his medical condition was sufficient, either alone or in combination with other factors, to justify a finding that recovery would be unconscionable); *see also Boone*, 119 M.S.P.R. 53, ¶ 9 (finding that, in deciding whether recovery of an overpayment was unconscionable, it was appropriate for the Board to consider whether collection of the overpayment would have a negative impact on the appellant because of her medical conditions, or that those medical conditions required expenditure of a portion of the installment amount). Accordingly, the appellant's treatment for stage 4 cancer, which then triggered severe depression, is relevant to our disposition. RPFR File, Tab 4 at 19, 22; IAF, Tab 7 at 5-7.

¶18     To sum up and reiterate the circumstances at hand, OPM approved the appellant's disability annuity and SSA approved her application for disability

benefits in the same month, March 2007. IAF, Tab 7 at 26-27, Tab 10 at 21. OPM received specific notice that the appellant was receiving SSA benefits in October 2008. RF, Tab 16 at 4, Tab 17 at 12. However, OPM did not act to adjust the appellant's annuity payments to stop overpaying her until July 2010. IAF, Tab 7 at 43-44, Tab 10 at 14. At that point, the appellant requested a waiver, but it took OPM years to issue its final denial. IAF, Tab 10 at 6. Subsequently, the appellant filed the instant Board appeal, in which OPM erroneously claimed that it learned of the overpayment in July 2010, then unceremoniously provided a document proving otherwise after the administrative judge had already ruled in OPM's favor. PFR File, Tab 4 at 5-6. For the most part, these mistakes and delays on the part of OPM have been unexplained. And they all occurred with the backdrop of the appellant struggling with sudden, unexpected, and grave health challenges—the ones that caused her to apply for a FERS disability annuity and SSA benefits in the first place. *E.g*., IAF, Tab 7 at 5-7.

¶19    Given the totality of the circumstances, we find that the appellant has proven by substantial evidence that recovery would be unconscionable regarding the portion of overpayment attributable to OPM's failure to account for her SSA benefits when it had documented notice of the same—between October 2008 and July 2010. For that portion of the overpayment, the appellant is without fault and recovery would be against equity and good conscience. The remainder of the overpayment is unfortunate, but the high standard necessary for waiver is not met.

¶20    We recognize, as the administrative judge did, that individuals who know or suspect that they are receiving overpayments are expected to set aside the amount overpaid pending recoupment and recovery is not against equity and good conscience in the absence of exceptional circumstances, such as extremely egregious errors or delays by OPM. *Boone*, 119 M.S.P.R. 53, ¶ 6. But, we disagree with the administrative judge's conclusion that this set-aside rule is another basis for denying the appellant a waiver. *See* RID at 9-10.

¶21  The record shows that the appellant suspected OPM owed her more money, not less. In its initial correspondence, OPM did warn the appellant that her annuity would have to be reduced if she were granted SSA benefits, but it also informed her that its interim payments would be substantially reduced to avoid any overpayment as OPM further processed her annuity. IAF, Tab 7 at 28-30, 32. These letters from OPM indicated that the interim payments "should be less" than her actual annuity, while also describing it as "rare" that an individual such as the appellant would be overpaid with the interim payments. *Id*. at 30, 32. Not expecting hers to be that "rare case," the appellant mistakenly believed that she was being underpaid. She, therefore, was awaiting a lump sum payment from OPM to account for the difference between her interim annuity payments and her final annuity calculation. *Id*. at 8-9; RF, Tab 21 at 11, 14. The appellant sought help from her local Congressman for the same. IAF, Tab 7 at 9, 42. Plus, even if the appellant had known or suspected that she was being overpaid, we find that this is a case of exceptional circumstances, for the reasons previously discussed. *Supra* ¶¶ 18, 20.

¶22  To conclude, we find that recovery of a portion of the overpayment—the portion attributable to OPM failing to adjust the appellant's annuity to account for her SSA benefits during the 21-month span of October 2008 to July 2010 when it had specific notice of the same—would be against equity and good conscience due to OPM's numerous, extensive, and largely unexplained errors or delays. Accordingly, we hereby remand the matter to OPM for issuance of a new reconsideration decision consistent with this decision.[7]

---

[7] We leave it to OPM to calculate the precise amount of the appellant's overpayment after accounting for the partial waiver. But, we note that the applicable guidelines indicate that this amount will be 60% of the appellant's SSA benefits for that period because the overpayment accrued more than a year after the appellant's annuity first commenced. 5 U.S.C. § 8452(a)(2)(A); *Cebzanov v. Office of Personnel Management*, 96 M.S.P.R. 562, ¶ 5 (2004); 5 C.F.R. § 844.302(c)(2); IAF, Tab 10 at 7-10.

**ORDER**

¶23     On remand, OPM shall issue a new reconsideration decision that waives the portion of overpayment described above.   OPM shall issue the new reconsideration decision within 60 calendar days from the date of this Order and shall advise the appellant of her right to appeal to the Board if she disagrees with that new decision.  *See, e.g.*, *Stephenson v. Office of Personnel Management*, 119 M.S.P.R. 457, ¶¶ 5-6 (2013).

¶24     We also ORDER OPM to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  We ORDER the appellant to provide all necessary information OPM requests to help it carry out the Board's Order.  The appellant, if not notified, should ask OPM about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶25     No later than 30 days after OPM tells the appellant it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that OPM did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes OPM has not fully carried out the Board's Order, and should include the dates and results of any communications with OPM.  *See* 5 C.F.R. § 1201.182(a).


FOR THE BOARD:          _____/s/ for_____
                        Jennifer Everling
                        Acting Clerk of the Board

Washington, D.C.